# STATE OF CONNECTICUT *v.* DAVID DESHAWN EUBANKS
## (AC 32603)

Beach, Bishop and Mihalakos, Js.

Argued October 14, 2011—officially released January 17, 2012

*Brian Young*, certified legal intern, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, David DeShawn Eubanks, appeals from the judgment of conviction, rendered after a jury trial, of unlawful possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 and of criminal violation of a protective order in violation of General Statutes § 53a-223 (a). The defendant claims that (1) there was insufficient evidence to sustain his conviction of unlawful possession of a weapon in a motor vehicle and (2) prosecutorial impropriety deprived him of a fair trial. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant. At approximately 6 a.m. on November 22, 2008, Bennett Hines, an officer with the New Haven police department, was sitting in his patrol car. At that hour in the morning there was no vehicle traffic and no cars were parked by the side of the street. Hines heard several gunshots come from the New Haven green in the vicinity

of Elm and College Streets, which location was approximately two blocks from where he was parked. When Hines looked in the general direction from which he heard the gunshots fired, he saw a dark colored sport utility vehicle (SUV) turn left from Elm Street onto Church Street. As the SUV turned onto Wall Street, Hines noticed that the tires of the SUV were "screeching . . . ." Based on the speed at which the SUV was traveling and the way it turned onto Wall Street, Hines believed that it was likely that the occupants of the vehicle had discharged the gunshots; as a result he began to follow the SUV. Hines reported the incident to dispatch and activated his cruiser's lights and sirens.

The SUV traveled through the city and onto the entrance ramp to Interstate 91; it "would not stop." Hines observed a "dark colored item come out of the passenger side window" and "a silver colored item come out of the driver side window." Based on his training and experience, Hines believed the items thrown out of the windows to be guns. Officer Edward Dunford, who was following behind Hines' cruiser, also saw "something dark colored come flying out of the passenger side of the vehicle . . . ."

Before entering the highway, the SUV stopped. Hines drew his gun and went to the driver's side of the car. Dunford drew his gun and went, with other officers, to the passenger side of the vehicle. Tanika McCotter was operating the SUV, the defendant, her boyfriend, was in the front passenger seat and her brother, Jayeron McCotter, was in the rear passenger seat. The defendant initially disobeyed commands from the officers, stepped over the guardrail and "look[ed] around him." The defendant eventually complied with orders to lie on the ground and was arrested. Tanika McCotter and Jayeron McCotter also were arrested. The officers then searched the area where they believed the items were tossed from the windows of the SUV. Using a thermal

imager, Sergeant Peter Moller found a semiautomatic .45 caliber black Ruger handgun, with the safety off and its magazine empty, lying on top of a pile of leaves. No other weapon was found.

Detective Joshua Armistead investigated the area of College and Elm Streets where the gunshots reportedly had been fired. Armistead found eight .40 caliber shell casings spread out over several car lengths. He stated that the casings "looked like they were fired from somebody moving on Elm Street." Lieutenant Joseph Rainone, a firearms examiner with the Waterbury police department, determined that the Ruger handgun was operable. He also determined that although the eight shell casings had similar class characteristics, he was unable to conclude whether they had been fired from the same firearm. He was able to determine, however, that the shell casings did not come from the Ruger handgun.[1]

The defendant was charged with one count of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a), one count of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1), one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), one count of unlawful possession of a weapon in a motor vehicle in violation of § 29-38 and one count of·criminal violation of a protective order in violation of § 53a-223 (a).

At trial, the state sought to introduce the testimony of Tanika McCotter from a prior court hearing[2] on the

---

[1] Rainone testified that although there are methods through which .40 caliber bullets can be fired in a .45 caliber gun, in this particular case that did not occur.

[2] The prior hearing was held pursuant to *State* v. *Stevens*, 278 Conn. 1, 895 A.2d 771 (2006), for purposes of determining whether the defendant had violated the conditions of his plea agreement on prior charges, and occurred on multiple days. For clarity, we refer to McCotter's prior testimony as her "*Stevens* testimony."

ground that she was unavailable to testify at trial. The defendant objected to the admission of the prior testimony on the ground that the state did not exercise due diligence in attempting to locate her and that he did not have the opportunity at the prior hearing effectively and adequately to cross-examine the witness. The court determined that the state had proved that Tanika McCotter was unavailable to testify and overruled the defendant's objections to the admission of her prior testimony. Tanika McCotter's prior testimony was redacted, as agreed upon by the parties, and was submitted to the jury in transcript form as a full exhibit. Its admissibility is not an issue on appeal.

In her *Stevens* testimony, Tanika McCotter testified to the following. She was driving the SUV at the time in question while the defendant was seated in the passenger seat and Jayeron McCotter, her brother, was seated in the back passenger seat. She heard gunshots, "kind of freaked out" and continued to drive until she noticed, as she was about to drive onto the highway, police cruisers following the SUV. She was arrested and taken to a police station. She stated that although she heard gunshots, she never saw a gun on the day in question. While at the police station, she told the detectives, in a recorded statement, that both of the passengers—Jayeron McCotter and the defendant—were shooting guns from the SUV. She initially told the police that she did not see a gun, but that after "they pressured for like ever" and told her she could lose her children if she did not cooperate, she told them that both passengers had fired guns. In response to a question of whether her statement to the police was truthful, she testified: "No, I don't know where the shots came from." She later stated, however, that she was being truthful to the police officers during the interview.

At the conclusion of the jury trial, the defendant was found guilty of unlawful possession of a weapon in a motor vehicle and of criminal violation of a protective order. He was found not guilty on all other counts. The court imposed a total effective sentence of seven years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant argues that there was insufficient evidence at trial to sustain his conviction of unlawful possession of a weapon in a motor vehicle. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Arthurs*, 121 Conn. App. 520, 523–24, 997 A.2d 568 (2010).

"[I]n a prosecution for a violation of § 29-38, the state must prove the following elements: (1) that the defen-

dant owned, operated or occupied the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no permit or registration for the weapon." *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

The defendant contests the element of knowing possession.[3] He argues that Tanika McCotter's recorded statement to the police, which asserted that both of the passengers were shooting guns from the SUV, was not admitted as substantive evidence, and, without that statement, the evidence was insufficient to support his conviction.

Our review of the record indicates that the defendant never specifically objected to the admission of Tanika McCotter's *Stevens* testimony—including her statements to the police—as substantive evidence, and that it was, in fact, admitted as substantive evidence. He objected, as noted previously, to the introduction of the transcript on other grounds. When the redacted transcript of Tanika McCotter's *Stevens* testimony was admitted into evidence as a full exhibit, the defendant did not object on the ground that any hearsay statements contained within the *Stevens* testimony should not be admitted for substantive purposes.

Following the admission of the prior testimony into evidence, the state rested. The defendant made a motion for a judgment of acquittal on the ground that the state had not met its burden of proof with respect to any

---

[3] The state's theory of the case regarding the knowledge element was knowledge by actual possession. At oral argument before this court, the state expressly disavowed any reliance on constructive possession. Therefore, we will not consider, for purposes of this claim, a theory of knowledge by constructive possession, and will consider only actual possession.

of the counts against him. The defendant specifically argued that there was no proof that he was carrying a firearm on the day in question. The state argued, inter alia, that according to Tanika McCotter's *Stevens* testimony, the two individuals in the SUV discharged firearms. The defendant did not question or object to the state's use of this evidence for substantive purposes. The court denied the defendant's motion, and, at the close of evidence, the defendant renewed his motion for a judgment of acquittal, arguing that the evidence did not show beyond a reasonable doubt that the defendant possessed a firearm. The state indicated that it had the "[s]ame argument" as before, and the court denied the motion. The defendant again did not object to the substantive use of or otherwise seek to limit the use of Tanika McCotter's *Stevens* testimony, including that part in which she testified as to her statement to the police.

During closing argument, the defendant referred to Tanika McCotter's out-of-court statements to the police as substantive evidence. He urged the jury to read through the transcript of her testimony and argued: "Obviously, it's the state's contention . . . *she said that they both had guns and fired.* You're going to read that. But guess what, you're going to read a whole lot more than that." (Emphasis added.) During its closing arguments, the state used Tanika McCotter's out-of-court statements to the police substantively, and the defendant did not object.

The court instructed the jury that the transcript of Tanika McCotter's *Stevens* testimony "is admitted as substantive evidence of the materials contained within the transcript. You can use the statements contained within a transcript for any purpose that you see fit. . . . [Y]ou are permitted to use this transcript as proof

of the defendant's guilt if you so chose."[4] No objections were taken to the court's charge.[5]

Based on our review of the record, we conclude that the entire redacted version of Tanika McCotter's *Stevens* testimony—including the out-of-court statements she made to the police—was admitted as substantive evidence at trial. Therefore, when reviewing the defendant's sufficiency claim, we must take into consideration as substantive evidence Tanika McCotter's out-of-court statements to the police.[6] "In cases in which hearsay evidence has been admitted without objection, we have held that the trier of fact could have relied on documents that were hearsay in proof of the matters stated therein, for whatever they were worth on their face. . . . If [inadmissible] evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far

[4] The defendant argues that in this portion of the court's charge, the court apprised the jury that it could use Tanika McCotter's prior in-court testimony as substantive evidence. He argues that the court never instructed that her out-of-court statements to the police were likewise admissible as substantive evidence. He instead states that, in the following instruction, the court told the jury to use the out-of-court statements for impeachment purposes: "Any conduct or statement of a witness which you find inconsistent with any other conduct or statement of that witness you may consider in weighing the credibility of that witness." This general instruction regarding credibility did not apprise the jury that it was restricted to Tanika McCotter's prior inconsistent statements for impeachment purposes only. The court did give limiting instructions on other matters directly prior to stating that Tanika McCotter's testimony could be used for substantive purposes. It did not give a limiting instruction regarding the use of her prior testimony.

[5] A charging conference occurred off the record, and both parties agreed that neither sought to have any portion of it put on the record.

[6] The defendant argues on appeal that Tanika McCotter's hearsay statements to police were not admitted for substantive purposes. This claim is contradicted by the record from which it is clear that all of her *Stevens* testimony was admitted for substantive purposes. The defendant does not now make any claim of evidentiary error regarding the admission of the statements for substantive purposes.

as it has probative value. . . . [T]herefore . . . appellate review of the sufficiency of the evidence . . . properly includes hearsay evidence even if such evidence was admitted despite a purportedly valid objection. Claims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error." (Citations omitted; internal quotation marks omitted.) *State* v. *Carey*, 228 Conn. 487, 495–96, 636 A.2d 840 (1994); see also *State* v. *Smith*, 73 Conn. App. 173, 180, 807 A.2d 500 ("a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial"), cert. denied, 262 Conn. 923, 812 A.2d 865 (2002); *State* v. *Rodriguez*, 39 Conn. App. 579, 592–93, 665 A.2d 1357 (1995) (reviewing all evidence in addressing sufficiency of evidence claim, including improperly admitted evidence, after ordering remand because trial court failed to suppress evidence), rev'd on other grounds, 239 Conn. 235, 684 A.2d 1165 (1996).

The jury was free to believe the portion of Tanika McCotter's *Stevens* testimony in which she acknowledged telling the police that both of the passengers in the SUV were firing guns.[7] See *State* v. *Goriss*, 108 Conn.

---

[7] A meticulous parsing of her prior testimony could lead to the conclusion that she actually testified only that she told the police that both fired guns, not that both actually fired guns. Thus, her testimony would not necessarily justify the finding that she testified that both fired guns.

We reject this line of reasoning. First, such a grammatical parsing would render most hearsay problems meaningless—most such objections would logically relate to relevance. Second, all participants at trial, as noted previously, clearly treated her recollection of her statement to police substantively, and no remonstrance was raised. Third, and perhaps most compelling, people in common parlance are likely to equate the statement, "I said 'X'," with the statement, " 'X' is true." Thus, the jury was free to determine whether she was telling the truth when she told the police that both passengers fired guns or whether she was telling the truth during her *Stevens* testimony when she claimed that she never saw a gun on the day in question and did not see either passenger shoot a gun.

The context of this case is, of course, different from the context of most hearsay problems. Frequently, when one side attempts to introduce a hearsay statement, the other party objects because he or she assumes it will be

App. 264, 270, 947 A.2d 1041 ("the jury, as the sole finder of fact, is free to believe all, none or some of a witness' testimony"), cert. denied, 289 Conn. 904, 957 A.2d 873 (2008); *State* v. *Arthurs*, supra, 121 Conn. App. 523–24 (when reviewing sufficiency claims, evidence viewed in light most favorable to sustaining verdict). Her testimony would permit a reasonable jury to conclude that, combined with the corroborating testimony of police officers regarding gunshots fired, the location and direction of the SUV and the spent .40 caliber shell casings, the defendant was in actual possession of a weapon in a motor vehicle on the day in question. In sum, when all the corroborating evidence is viewed in light of Tanika McCotter's *Stevens* testimony, there was sufficient evidence from which the jury reasonably could have concluded that the defendant was in actual possession of a gun in a motor vehicle on the day in question.

## II

The defendant next claims that prosecutorial impropriety during the state's closing argument deprived him of a fair trial. We are not persuaded.

"We begin our analysis by setting forth the applicable law regarding claims of prosecutorial impropriety. In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful

treated substantively by the finder of fact, if not successfully objected to or at least limited.

and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007).

"A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . Moreover, when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." (Citations omitted.) *State* v. *Singh*, 259 Conn. 693, 718, 793 A.2d 226 (2002).

The defendant argues that "the prosecutor's frequent and repetitive use of facts not admitted into evidence (reciting information from Tanika McCotter's recorded statement to [the] police, which was never entered as substantive evidence) constituted prosecutorial impropriety."

During closing arguments, the prosecutor frequently referred to Tanika McCotter's out-of-court statement to police that she saw the defendant use a gun on the day in question as her "testimony."[8] While we agree with the defendant that a prosecutor must confine himself or herself to evidence in the record; see *State* v. *Singh*, supra, 259 Conn. 717; we do not agree that the prosecutor in this case referred to evidence that was not in the record. As explained in more detail in part I of this opinion, Tanika McCotter's out-of-court statements to the police during her *Stevens* testimony were admitted for substantive purposes without objection. "Proffered evidence will be admitted unless opposing counsel objects and obtains a court ruling." C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 1.24.1, p. 62. The prosecutor was free, during closing arguments, to

---

[8] Although the prosecutor's use of the term "testimony" technically was inaccurate, in the circumstances of this case, and, in light of the discussion in part I of this opinion, it was harmless.

comment on the evidence admitted at trial for substantive purposes. "Counsel may comment upon facts properly in evidence and upon reasonable inferences to be drawn from them." (Internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 58, 612 A.2d 755 (1992).

The defendant also argues that the prosecutor improperly referred to facts that were not in evidence when he attributed the following phrase to Tanika McCotter, which she did not utter in her testimony: "Yes, that is what happened that day." To provide context for that statement, the prosecutor, when discussing the statements made by Tanika McCotter to the police, commented: "But, she did indicate, and she did, answer the questions by the state there, [*y*]*es, that's what I told the police that day. Yes, that is what happened that day.*" (Emphasis added.) The state then proceeded to describe its theory of the events of the day in question.

It is unclear from the cold transcript whether the prosecutor was attributing the words: "Yes, that is what happened that day," literally to Tanika McCotter or whether the prosecutor used that phrase for some other purpose. The prosecutor could have been paraphrasing Tanika McCotter's testimony in which she answered affirmatively when asked by the prosecutor whether she was "being truthful to the police officers" when making her statements to them. Even if the prosecutor's statement was not an entirely accurate recitation of her *Stevens* testimony, it was a rhetorical deviation hardly rising to the level of prosecutorial impropriety, and if it were improper, the defendant was not deprived of a fair trial under *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), because it was not severe, occurred only once and the jurors had, as a full exhibit, Tanika McCotter's *Stevens* testimony with them in the jury room.

The judgment is affirmed.

In this opinion the other judges concurred.