******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID EUBANKS *v.* COMMISSIONER
OF CORRECTION
(AC 36251)

Beach, Keller and West, Js.

*Argued October 26, 2015—officially released June 7, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant
state's attorney, with whom, on the brief, were *Michael
Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, David Eubanks, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he challenged his conviction for possession of a weapon without a permit in a motor vehicle in violation of General Statutes (Rev. to 2008) § 29-38.[1] The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and in denying his petition for a writ of habeas corpus claiming ineffective assistance of trial counsel. The respondent, the Commissioner of Correction, disagrees. We agree with the petitioner, and therefore, reverse the judgment of the habeas court.

The following facts were set forth by this court in the petitioner's direct appeal. *State* v. *Eubanks*, 133 Conn. App. 105, 106–10, 33 A.3d 876, cert. denied, 304 Conn. 902, 37 A.3d 745 (2012). "At approximately 6 a.m. on November 22, 2008, Bennett Hines, an officer with the New Haven police department, was sitting in his patrol car. At that hour in the morning there was no vehicle traffic and no cars were parked by the side of the street. Hines heard several gunshots come from the New Haven green in the vicinity of Elm and College Streets, which location was approximately two blocks from where he was parked. When Hines looked in the general direction from which he heard the gunshots fired, he saw a dark colored sport utility vehicle (SUV) turn left from Elm Street onto Church Street. As the SUV turned onto Wall Street, Hines noticed that the tires of the SUV were 'screeching. . . .' Based on the speed at which the SUV was traveling and the way it turned onto Wall Street, Hines believed that it was likely that the occupants of the vehicle had discharged the gunshots; as a result he began to follow the SUV. Hines reported the incident to dispatch and activated his cruiser's lights and sirens.

"The SUV traveled through the city and onto the entrance ramp to Interstate 91; it 'would not stop.' Hines observed a 'dark colored item come out of the passenger side window' and 'a silver colored item come out of the driver side window.' Based on his training and experience, Hines believed the items thrown out of the windows to be guns. Officer Edward Dunford, who was following behind Hines' cruiser, also saw 'something dark colored come flying out of the passenger side of the vehicle. . . .'

"Before entering the highway, the SUV stopped. Hines drew his gun and went to the driver's side of the car. Dunford drew his gun and went, with other officers, to the passenger side of the vehicle. Tanika McCotter was operating the SUV, the [petitioner], her boyfriend, was in the front passenger seat and her brother, Jayeron

McCotter, was in the rear passenger seat. The [petitioner] initially disobeyed commands from the officers, stepped over the guardrail and 'look[ed] around him.' The [petitioner] eventually complied with orders to lie on the ground and was arrested. Tanika McCotter and Jayeron McCotter also were arrested. The officers then searched the area where they believed the items were tossed from the windows of the SUV. Using a thermal imager, Sergeant Peter Moller found a semiautomatic .45 caliber black Ruger handgun, with the safety off and its magazine empty, lying on top of a pile of leaves. No other weapon was found.

"Detective Joshua Armistead investigated the area of College and Elm Streets where the gunshots reportedly had been fired. Armistead found eight .40 caliber shell casings spread out over several car lengths. He stated that the casings 'looked like they were fired from somebody moving on Elm Street.' Lieutenant Joseph Rainone, a firearms examiner with the Waterbury police department, determined that the Ruger handgun was operable. He also determined that although the eight shell casings had similar class characteristics, he was unable to conclude whether they had been fired from the same firearm. He was able to determine, however, that the shell casings did not come from the Ruger handgun.[2]

"The [petitioner] was charged with one count of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a), one count of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1), one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), one count of unlawful possession of a weapon in a motor vehicle in violation of § 29-38 and one count of criminal violation of a protective order in violation of [General Statutes] § 53a-223 (a).

"At trial, the state sought to introduce the testimony of Tanika McCotter from a prior court hearing[3] on the ground that she was unavailable to testify at trial. The [petitioner] objected to the admission of the prior testimony on the ground that the state did not exercise due diligence in attempting to locate her and that he did not have the opportunity at the prior hearing effectively and adequately to cross-examine the witness. The court determined that the state had proved that Tanika McCotter was unavailable to testify and overruled the [petitioner's] objections to the admission of her prior testimony. Tanika McCotter's prior testimony was redacted, as agreed upon by the parties, and was submitted to the jury in transcript form as a full exhibit. Its admissibility is not an issue on appeal.

"In her *Stevens* testimony, Tanika McCotter testified to the following. She was driving the SUV at the time in question while the [petitioner] was seated in the passenger seat and Jayeron McCotter, her brother, was

seated in the back passenger seat. She heard gunshots, 'kind of freaked out' and continued to drive until she noticed, as she was about to drive onto the highway, police cruisers following the SUV. She was arrested and taken to a police station. She stated that although she heard gunshots, she never saw a gun on the day in question. While at the police station, she told the detectives, in a recorded statement, that both of the passengers—Jayeron McCotter and the [petitioner]—were shooting guns from the SUV. She initially told the police that she did not see a gun, but that after 'they pressured for like ever' and told her she could lose her children if she did not cooperate, she told them that both passengers had fired guns. In response to a question of whether her statement to the police was truthful, she testified: 'No, I don't know where the shots came from.' She later stated, however, that she was being truthful to the police officers during the interview.

"At the conclusion of the jury trial, the [petitioner] was found guilty of unlawful possession of a weapon in a motor vehicle and of criminal violation of a protective order. He was found not guilty on all other counts. The court imposed a total effective sentence of seven years imprisonment." (Footnotes in original) Id.

Following the petitioner's conviction and this court's affirmance of that conviction on direct appeal, he filed a petition for a writ of habeas corpus. In his amended petition for a writ of habeas corpus, the petitioner claimed that his trial counsel, Walter Bansley IV, rendered ineffective assistance in failing to specifically object on hearsay grounds to the substantive use of the portions of Tanika McCotter's *Stevens* testimony during which she was impeached with her statement to police and that, but for his trial counsel's ineffectiveness, there was a reasonable probability that the result of petitioner's trial would have been different.[4]

Following a habeas trial, the court issued an oral decision denying the petition, and concluding that the petitioner's trial counsel did not render ineffective assistance. The court concluded that the petitioner had failed to prove that his trial counsel's representation was deficient or that he suffered any prejudice from his trial counsel's performance. In reaching its conclusion, the court made several relevant findings of fact, including, inter alia, the following: "[the petitioner's trial counsel] also adequately objected to [Tanika] McCotter's testimony from the *Stevens* hearing being introduced into evidence, which the trial court overruled; but at any rate, he was able to redact portions of the testimony that may have been prejudicial to the Petitioner." The petitioner filed a petition for certification to appeal from the habeas court's denial of his petition for a writ of habeas corpus, which the habeas court denied. This appeal followed.

On direct appeal, this court determined that "[o]ur

review of the record indicates that the defendant never specifically objected to the admission of Tanika McCotter's *Stevens* testimony—including her statements to the police—as substantive evidence . . . ." *State v. Eubanks*, supra, 133 Conn. App. 111. Given the petitioner's belief that the habeas court's finding that the petitioner's trial counsel "adequately objected" to McCotter's *Stevens* testimony appeared to be in conflict with this court's determination that he "never specifically objected" to McCotter's *Stevens* testimony as substantive evidence, the petitioner filed a motion for articulation requesting the habeas court to articulate several bases for its conclusion that the petitioner's attorney rendered constitutionally adequate representation at the petitioner's criminal trial.[5] The habeas court denied the petitioner's motion for articulation, and this court granted the petitioner's motion for review in part, ordering the habeas court to address the requests regarding whether its finding constituted a finding that his trial counsel objected to the *Stevens* testimony and whether it constituted a finding that his trial counsel's failure to object to the *Stevens* testimony was reasonable. In response, the habeas court's articulation stated: "(1) [the petitioner's trial counsel] objected to the *Stevens* testimony being introduced into evidence. He did not object on hearsay grounds. The finding that [the petitioner's trial counsel] adequately objected is premised factually on the presumption that counsel performed effectively, which the petitioner did not affirmatively rebut with evidence. (2) This court cannot find that [the petitioner's trial counsel's] failure to object to the *Stevens* testimony on hearsay grounds was unreasonable, as no evidence whatsoever was presented as to this matter. Such a finding would be erroneous because it lacks sufficient evidentiary basis."

First, we set forth "the applicable standard of review and procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a differ-

ent manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Atkins* v. *Commissioner of Correction*, 158 Conn. App. 669, 674–75, 120 A.3d 513, cert. denied, 319 Conn. 932, 125 A.3d 206 (2015).

Moreover, "[when] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 784, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009). For the reasons we set forth, we conclude that the habeas court abused its discretion by denying certification to appeal the petitioner's claim.

"To decide if the habeas court abused its discretion by denying certification to appeal, we must look to the merits of the underlying claim of ineffective assistance of counsel. [I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in [*Strickland*], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"To establish ineffective assistance of counsel under the *Strickland* standard, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove

either prong is fatal to an ineffective assistance claim." (Citations omitted; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 544–45, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because the court improperly denied his claim of ineffective assistance of trial counsel.[6] In its articulation, the habeas court concluded that the petitioner did not present evidence to rebut the presumption that his trial counsel rendered effective assistance with respect to the petitioner's claim that his trial counsel failed to object on hearsay grounds to the substantive use of portions of Tanika McCotter's *Stevens* testimony during which she was impeached with her statement to the police. With respect to the first prong of *Strickland*, the petitioner argues that the habeas court erred in concluding that counsel's performance was not deficient because there was sufficient evidence presented during the habeas trial to rebut the presumption that his trial counsel exercised reasonable professional judgment. We agree, and therefore, we conclude that the habeas court improperly denied the petitioner's ineffective assistance claim against his trial counsel.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 829–30, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Nevertheless, that presumption may be overcome by a showing that no conceivable tactical justification for counsel's actions existed. See *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 367, 77 A.3d 777 (2013).

On direct examination at the habeas trial, the petitioner's trial counsel was asked "why did you allow this testimony to come in as a substantive evidence," to which he stated, "I didn't allow it to come in" and "[i]n fact, I objected to it coming in and the court ruled against me and allowed it to come in."[7] During cross-examination, he stated "I was definitely trying to keep out the transcripts from the *Stevens* hearing." Further-

more, the petitioner's trial counsel acknowledged that it was his recollection that he "identified everything [he] felt [he] could object to and brought it to [the prosecutor]." Based on his testimony at the habeas trial, it is clear that his intention was to keep the *Stevens* testimony transcripts from being admitted into evidence by objecting on any grounds available. The petitioner's trial counsel did not indicate that he made a reasonable tactical judgment to refrain from objecting based on hearsay grounds, nor did he offer a reasonable professional judgment that an objection based on hearsay grounds would not have succeeded. See *People* v. *Fillyaw*, 409 Ill. App. 3d 302, 315, 948 N.E.2d 1116 (2011) ("[w]e hold that counsel's apparent unfamiliarity with the law and failure to object on the proper grounds to the improper admission of [a witness' written statement to police] was unprofessional . . . and his performance thus meets the first prong of the *Strickland* standard" [citation omitted]).

When Tanika McCotter testified at the *Stevens* hearing, her prior statement to police was not admitted as substantive evidence, but rather was marked for identification and used to impeach her testimony. At the petitioner's criminal trial, Tanika McCotter could not be found to testify, so the transcript of her *Stevens* testimony was hearsay that was admissible as former testimony under § 8-6 (1) of the Connecticut Code of Evidence.[8] The references within the transcripts of her *Stevens* testimony to her prior inconsistent statement to police, however, constituted inadmissible hearsay within hearsay pursuant to both §§ 8-5 and 8-7 of the Connecticut Code of Evidence absent the applicability of some other exception to the hearsay exclusion.[9] In *State* v. *Williams*, 231 Conn. 235, 249, 645 A.2d 999 (1994), overruled on other grounds by *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000) (en banc), our Supreme Court held that "[a]lthough double hearsay is admissible if each part is independently admissible, the prior inconsistent statement at issue here was not independently admissible for substantive purposes because the witness did not testify at trial." Similar to the facts in *Williams*, here, Tanika McCotter did not testify at the criminal trial, and therefore, the references to her prior statement to police included in the transcript of her *Stevens* testimony were not admissible as substantive evidence. Id. In *State* v. *Atkins*, 57 Conn. App. 248, 256–57, 748 A.2d 343, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000), this court affirmed the inclusion of a *Whelan*[10] statement within a witness' probable cause testimony that was read to the jury during the criminal trial, but only for the purpose of impeachment of that witness' probable cause testimony and not as substantive evidence.

The respondent argues that the challenged portions of Tanika McCotter's *Stevens* testimony, during which she was impeached with her statement to police, were

admissible. We do not agree. As we have previously stated, those portions of her testimony were inadmissible as substantive evidence. The respondent asserts that those portions of Tanika McCotter's *Stevens* testimony could have been admitted as substantive evidence under the residual exception pursuant to § 8-9 of the Code of Evidence.[11] The portions of her *Stevens* testimony that the respondent argues were admissible were comprised of her impeachment testimony, and thus those portions lack the "equivalent guarantees of trustworthiness and reliability" as required by § 8-9.[12] With respect to the respondent's argument that those portions of Tanika McCotter's *Stevens* testimony would have been admissible for the nonhearsay purpose of "explaining her testimony that what she told police was true, by identifying what it was she told police that she was now affirming as true," it is unclear from the testimony which statement she is affirming as true, as she testified that she initially told the police there was no gun and the police then pressured her into stating that both passengers in the car possessed guns. Furthermore, even if those portions of her testimony were admissible to provide context, they would only be admissible as nonsubstantive evidence, and the jury would be advised that they should not be used for the truth of the assertion that she saw the defendant shoot a gun. See *State* v. *Paul B.*, 143 Conn. App. 691, 708, 710–11, 70 A.3d 1123 (2013), aff'd, 315 Conn. 19, 105 A.3d 130 (2014).

The failure of the petitioner's trial counsel to object to the references in Tanika McCotter's *Stevens* testimony concerning her statement to police indicates that he was unaware of the fact that the references presented an objectionable hearsay issue. He did not indicate in his testimony before the habeas court that he refrained from objecting based on trial strategy. Rather, he testified that his strategy *was* to object and to prevent Tanika McCotter's *Stevens* testimony from being admitted into evidence for substantive purposes. Given this strategy and the fact that Tanika McCotter's *Stevens* testimony contained inadmissible hearsay, his failure to identify the second level of hearsay within Tanika McCotter's *Stevens* testimony and subsequent failure to object to its use as substantive evidence was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in criminal law." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). Furthermore, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton* v. *Alabama*, U.S. , 134 S. Ct. 1081, 1089, 188 L. Ed.

2d 1 (2014). Moreover, a reasonably competent attorney would have known, if his or her strategy had been to object on any ground available, that objecting based on hearsay was valid and likely to have resulted in the portions of Tanika McCotter's *Stevens* testimony referencing her prior statement to police not being admitted for substantive purposes.

This court, in the past, has determined that certification to appeal should have been granted when counsel's actions appeared to conflict with what might generally be considered effective representation even though explicitly tactical or strategic. See *Gibson* v. *Commissioner of Correction*, 118 Conn. App. 863, 872, 986 A.2d 303 ("[b]ecause this question regarding induced error versus sound trial strategy deserved encouragement to proceed further, the petitioner's petition for certification should have been granted"), cert. denied, 295 Conn. 919, 991 A.2d 565 (2010). In *Robinson* v. *Commissioner of Correction*, 62 Conn. App. 429, 771 A.2d 952, cert. denied, 257 Conn. 902, 777 A.2d 194 (2001), this court concluded that the habeas court should have granted the petition for certification to appeal where trial counsel had failed to file a motion to have the petitioner treated as a youthful offender where it was clear that the petitioner met all of the statutory requirements of eligibility for the program. This court concluded that the petitioner's trial counsel was not ineffective because it was evident from his testimony that he explored the program and he found that the court would likely not grant eligibility, and therefore decided not to file such a motion. Id., 435. Nonetheless, this court still concluded that "[w]hether counsel should have applied for youthful offender treatment was an issue debatable among reasonable jurists" and that the petition for certification should have been granted. Id.

In the present case, the petitioner's trial counsel did not assert that he actively chose not to object on hearsay grounds as part of a trial strategy, but rather testified at the habeas trial that "[he] was definitely trying to keep out the transcripts from the *Stevens* hearing." Furthermore, he affirmed that he recalls identifying all parts of the testimony to which he could object to when working on redacting the transcripts with the prosecutor, however, the redactions did not address the references within Tanika McCotter's *Stevens* testimony to her statement to police. Therefore, because failing to object to the admission of those references in the *Stevens* testimony as substantive evidence appears to conflict with what would be considered effective representation, coupled with the fact that his actions were not part of a trial strategy, we conclude that the failure of the petitioner's trial counsel to object to the substantive use of those references in Tanika McCotter's *Stevens* testimony, under the facts of this case, amounted to deficient performance.

Having concluded that *Strickland*'s performance prong is satisfied, we next turn to the question of whether the petitioner was prejudiced by his trial counsel's failure to object. We conclude that the court improperly concluded that the petitioner failed to demonstrate that he was prejudiced as a result of his trial counsel's failure to object to the substantive use of those portions of Tanika McCotter's *Stevens* testimony during which she was impeached with her statement to police.

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694. "In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 599, 940 A.2d 789 (2008).

In reviewing the merits of an ineffective assistance of counsel claim, "[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of [fact], is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

On direct appeal, this court stated: "The jury was free to believe the portion of Tanika McCotter's *Stevens* testimony in which she acknowledged telling the police that both of the passengers in the SUV were firing guns. . . . Her testimony would permit a reasonable jury to conclude that, combined with the corroborating testimony of police officers regarding gunshots fired, the location and direction of the SUV and the spent .40 caliber shell casings, the defendant was in actual possession of a weapon in a motor vehicle on the day in question. In sum, when all the corroborating evidence is viewed in light of Tanika McCotter's *Stevens* testimony, there was sufficient evidence from which the jury reasonably could have concluded that the defendant was in actual possession of a gun in a motor vehicle on the day in question." (Citations omitted; footnote omitted.) *State* v. *Eubanks*, supra, 133 Conn. App. 114–15.

Without that portion of Tanika McCotter's *Stevens* testimony, there was very little evidence to establish that the petitioner was in actual possession of a gun in a motor vehicle. The petitioner's mere presence in the SUV was an insufficient basis for an inference that he possessed a gun in a motor vehicle. See *State* v. *Watson*, 165 Conn. 577, 596, 345 A.2d 532 (1973) ("[i]t cannot be logically and reasonably presumed that an occupant of a motor vehicle knew of the presence of an unregistered weapon in a vehicle simply on the fact that he was an occupant"), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). In *State* v. *Gerardi*, 237 Conn. 348, 353–54, 677 A.2d 937 (1996), shell casings were found inside the vehicle behind the defendant's seat which were determined to have come from the machine gun found along the route of pursuit of the vehicle by the police. Although the defendant in *Gerardi* was originally convicted of possession of a machine gun for an aggressive and offensive purpose in violation of General Statutes (Rev. to 1993) § 53-202 (c),[13] he was found not guilty of knowingly having a weapon in a motor vehicle in violation of § 29-38. Id., 352. In the present case, there was no evidence found inside the SUV, and the spent .40 caliber shell casings that were recovered did not match the .45 caliber black Ruger handgun that was found by the pursuing police officers who testified they believed it to be one of the objects they had observed being thrown from the vehicle during the pursuit. Therefore, but for the failure of the petitioner's trial counsel to object to the substantive use of those portions of Tanika McCotter's *Stevens* testimony about her prior statement to police, there is a reasonable probability that the result of the proceeding would have been different. *Strickland* v. *Washington*, supra, 466 U.S. 694. Thus, the failure of the petitioner's trial counsel to object to the admission of Tanika McCotter's *Stevens* testimony on hearsay grounds prejudiced the petitioner because when the corroborating evidence is viewed in the absence of the substantive use of that testimony, there is very little evidence to support the petitioner's conviction. Accordingly, we conclude that the habeas court's conclusion that the petitioner was not prejudiced by the failure to object to the admission of Tanika McCotter's *Stevens* testimony on hearsay grounds is not legally and logically correct as it is not supported by the facts that appear in the record.

The petitioner has successfully demonstrated that the result of his ineffective assistance claim involves issues that are debatable among jurists of reason, that a court could resolve the issue in a different manner, and that it presents a question adequate to deserve encouragement to proceed further. Accordingly, we conclude that the habeas court abused its discretion in denying certification to appeal. We further conclude that the court erred in denying the petitioner's claim of ineffective assistance of counsel regarding his trial counsel's fail-

ure to object to the substantive use of Tanika McCotter's *Stevens* testimony.

The judgment is reversed only as to the petitioner's claim of ineffective assistance of trial counsel for failure to object to the substantive use of portions of Tanika McCotter's *Stevens* testimony during which she was impeached with her statement to police, and the case is remanded to the habeas court with direction to render judgment granting the petition for a writ of habeas corpus as to this claim and to order a new trial for the petitioner.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2008) § 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ." Hereinafter, unless otherwise indicated, all references to § 29-38 in this opinion are to the 2008 revision of the statute.

[2] "Rainone testified that although there are methods through which .40 caliber bullets can be fired in a .45 caliber gun, in this particular case that did not occur." *State* v. *Eubanks*, supra, 133 Conn. App. 108 n.1

[3] "The prior hearing was held pursuant to *State* v. *Stevens*, 278 Conn. 1, 895 A.2d 771 (2006), for purposes of determining whether the [petitioner] had violated the conditions of his plea agreement on prior charges, and occurred on multiple days. For clarity, we refer to [Tanika] McCotter's prior testimony as her '*Stevens* testimony.' " *State* v. *Eubanks*, supra, 133 Conn. App. 108 n.2.

[4] The amended petition for a writ of habeas corpus enumerated multiple deficiencies, however, in this appeal, the petitioner is only challenging the court's ruling on his trial counsel's failure to object on hearsay grounds to the substantive use of the portions of Tanika McCotter's *Stevens* testimony during which she was impeached with her statement to police.

[5] The petitioner requested the habeas court to articulate, inter alia, "whether its finding that [petitioner's trial counsel] 'adequately objected to [Tanika] McCotter's testimony from the *Stevens* hearing being introduced into evidence': (1) constitutes a finding that [the petitioner's trial counsel] *did* object to the *Stevens* testimony and the hearsay within the *Stevens* testimony being admitted as substantive evidence, and, if so, the factual basis for that finding; or (2) constitutes a finding that [the petitioner's trial counsel's] failure to object to the *Stevens* testimony and the hearsay within the *Stevens* testimony being admitted as substantive evidence was reasonable, and, if so, the legal basis for that finding. . . ."

[6] The petitioner made an additional argument that certification to appeal was improperly denied because the court's reliance on *Strickland*'s presumption of competent representation was unsound. Because we are reversing the court's decision on other grounds, we do not reach this argument.

[7] The record reflects that the petitioner's trial counsel objected to the admission of the *Stevens* testimony on the ground that the state did not exercise due diligence in attempting to locate her and that he did not have the opportunity at the prior hearing effectively and adequately to cross-examine the witness, however, he did not object based on hearsay grounds.

[8] Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. . . ."

[9] Section 8-5 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, provided the

declarant is available for cross-examination at trial:

"(1) Prior inconsistent statement. A prior inconsistent statement of a witness, provided (A) the statement is in writing or otherwise recorded by audiotape, videotape, or some other equally reliable medium, (B) the writing or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ."

Section 8-7 of the Connecticut Code of Evidence provides: "Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception."

[10] *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). See footnote 12 of this opinion.

[11] Section 8-9 of the Connecticut Code of Evidence provides: "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule."

[12] Assuming, arguendo, that the residual exception could be applied to admit for substantive purposes the portions of Tanika McCotter's *Stevens* testimony in which she was impeached with her statement to the police, on the basis of the facts in the record, it is unlikely that, under that exception, the court would have admitted such evidence. In evaluating whether those portions of her *Stevens* testimony bore indicia of trustworthiness and reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the impeachment testimony, we observe that, at the *Stevens* hearing, Tanika McCotter testified that she had been coerced into providing her statement to the police and she testified to a different version of events. Also, the police statement was not admitted at the *Stevens* hearing for substantive purposes, but was marked as an identification exhibit and used to impeach her testimony.

The more fundamental problem with the respondent's reliance on the residual exception is that the *Whelan* rule; see *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); codified in § 8-5 (1) of the Connecticut Code of Evidence, specifically applies to the evidence at issue as it governs the admission for substantive purposes of prior written inconsistent statements. To apply the residual exception in the present circumstances, in which Tanika McCotter did not testify at trial and was not subject to cross-examination, would conflict with *Whelan*. See *State* v. *Williams*, supra, 231 Conn. 249–50 (*Whelan* does not apply when declarant of prior inconsistent statement does not testify at trial); *State* v. *Atkins*, supra, 57 Conn. App. 349 (use of prior inconsistent statement for impeachment purposes does not implicate *Whelan*).

"It is well settled that, [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies. . . . In *State* v. *Whelan*, supra, 200 Conn. 743, however, [our Supreme Court] adopted a hearsay exception allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination. This rule has also been codified in § 8-5 (1) of the Connecticut Code of Evidence, which incorporates all of the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided." (Citation omitted; internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 641–42, 945 A.2d 449 (2008).

[13] In *Gerardi*, the defendant's conviction of possession of a machine gun for an aggressive and offensive purpose was reversed on the basis of an issue regarding a mandatory presumption in the jury instructions. *State* v. *Gerardi*, supra, 237 Conn. 353–54.