******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PEDRO L. MIRANDA
(SC 19597)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Robinson, D'Auria and Vertefeuille, Js.

*Syllabus*

Convicted of the crime of murder in connection with the death of the victim, the defendant appealed to this court. At trial, the victim's mother was asked, on direct examination by the state, whether she had heard information relating the defendant to the victim's disappearance. The defendant objected on the basis of relevancy, and the trial court overruled that objection. The victim's mother responded in the affirmative, and the defendant did not raise any additional objections. Subsequently, another state's witness, D, testified that he had seen the victim get into a car on the day of her disappearance and that, although he did not see the driver's face, that person had a light complexion, a mustache, and curly brown or black hair. D then testified that he had relied on guidance from God in identifying the driver in a photographic array presented by the police. The defendant objected, and the jury was excused. Thereafter, the trial court ruled that the testimony regarding the photographic array was inadmissible. The jury returned, and D's testimony concluded without further discussion of his identification. Subsequently, the trial court, noting its concern that the defendant's objection was not sustained in the jury's presence, indicated that D's improper testimony could be addressed in the jury charge and offered to address the matter prior to the charge if requested. Defense counsel then indicated to the court that he was working on language for an instruction. The trial court subsequently received the defendant's request to charge and reviewed its proposed instructions with the parties. The trial court ultimately instructed the jury that it had sustained the objection to D's testimony and that any answer given after that objection should be disregarded. On appeal, the defendant claimed that the trial court incorrectly failed to strike D's improper testimony. The defendant further claimed that the trial court improperly permitted the victim's mother to testify that she had heard information relating the defendant to the victim's disappearance because that testimony constituted inadmissible hearsay. *Held*:

1. The defendant expressly waived his claim that the trial court incorrectly failed to strike D's improper testimony; the defendant had approved of the trial court's proposed remedy for D's improper testimony by expressing satisfaction with the trial court's plan to use an instruction, by declining to request action by the trial court before it issued that instruction, and by ultimately approving of the trial court's proposed instruction.

2. The defendant's claim that the trial court improperly permitted the victim's mother to testify that she had heard information relating the defendant to the victim's disappearance on the ground that it constituted inadmissible hearsay was unpreserved and, accordingly, unreviewable; the defendant objected to that testimony on the basis of relevancy, and, thus, the trial court had no notice or opportunity to consider the issue of hearsay.

(*Two justices concurring separately in one opinion*)

Argued September 13—officially released January 2, 2018

*Procedural History*

Information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before the court, *Hon. John F. Mulcahy*, judge trial referee; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Pedro L. Miranda, appeals[1] from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims that the trial court improperly, (1) failed to strike the testimony of a witness who claimed that guidance from God, rather than his own recollection, had led him to identify the perpetrator in a photographic array, after the court ruled, in the jury's absence, that this testimony was inadmissible, and (2) permitted the victim's mother to testify that she had heard that the defendant was connected to the victim's disappearance. We conclude that the defendant waived his first claim and failed to preserve his second claim. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts, which the jury reasonably could have found, and procedural history. On October 8, 1987, the thirteen year old victim, Mayra C., left her apartment in Hartford, where she lived with her mother, Norma C., and siblings, and began walking to school. Although the victim ordinarily walked to school with friends, that morning she had left early to work on a school project and was traveling alone. At about the same time, Jose Diaz and his brother, who were both employed as maintenance workers in a nearby building, were walking on Sigourney Street in Hartford. Diaz' brother recognized the victim because he had frequently seen her walking by on her way to school. That morning, Diaz and his brother heard a car horn sound and noticed a yellow Nissan Datsun stopped at an intersection approximately twenty feet away. Diaz and his brother saw the driver of the Datsun lower the window and speak with the victim. Diaz' brother explained that, based on the expression on the victim's face, it appeared that she knew the driver. Diaz and his brother saw only the driver's profile, but were able to describe him as a Hispanic male with light or medium complexion, brown or black curly hair, and a mustache. Diaz and his brother then saw the victim get into the Datsun, which then drove away.

Later that day, when the victim did not return home, the victim's mother became concerned and went to the victim's school. After the school informed her that the victim had never arrived at school that day, she called the police. While the victim was still missing, the defendant contacted the victim's mother and informed her that he had nothing to do with the victim's death. Although the victim's mother had known the defendant for several years, because the two lived in the same apartment building, she did not know him well.

On November 8, 1987, two hikers found the victim's body in a wooded area adjacent to Gardner's Nurseries in the town of East Windsor, where the defendant had

once been employed. The victim's body had suffered from extensive decomposition. An autopsy of the victim revealed several fractures to the left side of her skull that resulted from two or more blows to her head with a blunt object. Although the victim's brain tissue was too decomposed to develop a full understanding of what had happened, bloody tissue found between her skull and her brain indicated that the blunt force trauma to her skull caused bleeding of the brain, which resulted in her death.

Thereafter, the police interviewed employees of the nursery. Employees of the nursery testified that the defendant had been employed there and that he drove a yellow Datsun to work. Moreover, the employees reported seeing a yellow Datsun coming down a dirt road in the nursery on a Saturday in October, 1987, between 1 and 1:30 p.m. They were unable to see the driver, but they assumed it was the defendant. The Datsun disappeared over a hill near the wooded area where the victim's body was ultimately discovered. The Datsun was out of sight for about ten minutes, and then it reappeared on the dirt road and drove off the property.

After the victim's body was found, the police established surveillance of her wake to look for a vehicle matching the one described by Diaz and his brother. The police observed a yellow Datsun parked on the street near the funeral home with a Hispanic male driver, who turned out to be the defendant. Officers approached the vehicle and asked the defendant if he would be willing to accompany them to the police station for an interview. The defendant agreed. The defendant was ultimately interviewed by the police three times, on November 12, November 14, and December 3, 1987.

During those interviews, the defendant informed the police that he lived in Springfield, Massachusetts, but, at the time the victim had gone missing, he had been staying at his girlfriend's residence on Dexter Street in Hartford. He also told the police that, on October 8, 1987, he had gone to work at an insurance company in Simsbury at approximately 6 a.m. and had come home around noon. The police later learned from his employer, however, that he had not reported to work that day. The defendant later stated that he had not gone to work that day because he was feeling sick to his stomach. The defendant explained that he had been parked near the funeral home because he had given two people a ride from Massachusetts to Hartford, although he did not know their names. He further explained to the police that he had been visiting a man named Juan who lived in Hartford. Despite these interviews, the investigation into the victim's death went cold.

Twenty-one years later, the police reinitiated their

investigation and, on December 5, 2008, arrested the defendant for the victim's murder. The state charged the defendant with one count of murder in violation of § 53a-54a. The case was tried to a jury, which subsequently returned a verdict of guilty. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to sixty years of imprisonment to be served consecutively to a life sentence that he was already serving in connection with an unrelated case. This appeal followed. See footnote 1 of this opinion. Additional relevant facts will be set forth as necessary.

## I

We begin with the defendant's claim that the trial court improperly failed to strike certain testimony from a witness who stated that guidance from God, rather than his own recollection, had led him to identify the perpetrator in a photographic array, after the court ruled, in the jury's absence, that this testimony was inadmissible.

The following additional facts and procedural history are relevant to our resolution of this claim. At the defendant's trial, Diaz testified about what he had seen on the morning of October 8, 1987. Diaz testified that he had not seen the face of the driver of the yellow Datsun that morning because he had observed the driver from the side only. He was, however, able to describe the driver as having a light complexion, a mustache, and curly brown or black hair. The state then showed Diaz eight photographs, which were marked as an exhibit for identification purposes, and Diaz confirmed that the police had shown him those photographs in 2008 while questioning him about what he had seen on October 8, 1987. The following colloquy then occurred:

"[The Prosecutor]: Based on reviewing the pictures . . . were you able to identify anyone in that set of pictures?

"[The Witness]: Look, it was the same that I told them. I sat down, they brought the album, and I'm a Christian, I asked God for direction. When I looked at the pictures, my eyesight was brought to this one picture and I started crying and the officer asked me what was going [on], and I told him I asked God for direction. And I pointed to picture number [five].

"[Defense Counsel]: Your Honor . . . I would object. I don't know that I have ever had an identification based upon direction from God, and I'm going to object to this entire line of inquiry or any identification that this witness may have made based on divine intervention. Your Honor, it's clear that there are practices and procedures that need to be followed, and this is not one of them.

"The Court: The question has been answered. Fair to be cross-examined, I suppose. Yes. Do you wish to

be heard or do you want the jury excused?

"[Defense Counsel]: I would ask that they be excused, Your Honor."

The trial court then excused the jury, and the state sought to rehabilitate Diaz' identification as being based in part on his recollection of seeing the driver, but Diaz repeatedly stated that his identification was based on a divine message, and not his own recollection. The defendant did not ask Diaz any questions, but reiterated his objection that the testimony was improper and prejudicial. After further argument and discussion, the court ruled, in the jury's absence, as follows: "[The witness] says that [his] identification [was] not based on recollection of the appearance of the person. Under those circumstances, I don't feel I can allow it." The court then took a brief recess during which it requested to see both attorneys in chambers. After the recess, the jury returned, and the state finished its examination of Diaz without further discussion of the identification of the driver. The court did not inform the jury that it had sustained the defendant's objection, and the defendant did not ask the court to notify the jury or to instruct the jury to disregard Diaz' answer.

Two days later, on February 25, 2015, the trial court noted the following outside the presence of the jury: "We did have a conversation this morning in chambers regarding the identification or lack of identification by [Diaz], and I did indicate that that could be addressed in the charge to the jury, *but if there was anything you felt should be addressed preliminarily, just let me know, that is, prior to the charging conference.* My concern was and I'm not sure that the objection was sustained in the presence of the jury." (Emphasis added.) The defendant did not object to the procedure proposed by the court or ask that the issue be remedied prior to the jury charge. To the contrary, defense counsel indicated that he was working on language for the court to use in its jury instruction.

Thereafter, on March 2, 2015, the defendant filed a written request to charge regarding Diaz' testimony, in which the defendant argued that, although he had "objected to [Diaz'] testimony and no specific identification of the defendant was made by [Diaz] in front of the jury, [the] defendant believes that some instruction is needed so that the jury understands that the [c]ourt sustained [the] objection to the proffered testimony." The defendant's proposed instruction provided in relevant part: "Since the [c]ourt sustained this objection, whatever you may have heard of [Diaz'] answer at that time, you must disregard that testimony and it is not to be considered by you at any time during your deliberations on the evidence in this case."

On March 3, 2015, during a charging conference, the parties indicated that they had an opportunity to review

the trial court's proposed jury instructions. The court's instruction with respect to Diaz' improper testimony was substantially similar to the defendant's proposed instruction, providing in relevant part: "Accordingly because the Court sustained this objection, whatever you may have heard of [Diaz'] answers *after* [*the defendant*] *objected* must be disregarded and not be considered by you at any time during your deliberations." (Emphasis added.) The defendant indicated no objection to this instruction. Specifically, when the court asked whether this instruction was "okay," defense counsel responded, "[r]ight."

On March 4, 2015, at a second charging conference, the defendant raised issues with respect to some of the trial court's instructions regarding eyewitness identification,[2] but did not object to the proposed instruction regarding Diaz' testimony. As such, during its final charge to the jury, the court gave the instruction regarding Diaz' testimony that the parties had previously approved. Additionally, at the defendant's request, the court instructed the jury that "there was no direct evidence identifying the defendant as the perpetrator of the murder of [the victim]."

On appeal, the defendant claims that the trial court should have stricken Diaz' testimony that God had directed him to identify the perpetrator in the photographic array.[3] Specifically, the defendant contends that, because the court sustained the defendant's objection outside the presence of the jury, Diaz' improper testimony remained in the case, and the jury could therefore have drawn reasonable inferences from it. Moreover, the defendant contends that the court's instruction to the jury regarding Diaz' improper testimony did not adequately remedy the issue. Specifically, the defendant takes issue with the portion of the instruction that directed the jury to disregard testimony given by Diaz *after* the objection. Given that the improper testimony occurred prior to the objection, the defendant contends that the instruction improperly directed the jury to disregard testimony given after the objection, not prior to it.

In response, the state argues, inter alia, that the defendant's claim is unreviewable because he waived this claim before the trial court.[4] Specifically, the state contends that not only did the defendant fail to request that the court notify the jury that it had sustained the objection or strike Diaz' improper testimony, but he also explicitly approved of the court's proposed remedy through the issuance of instructions to the jury.

The defendant's claim on appeal ultimately centers on the adequacy of the remedy the trial court implemented to address Diaz' improper testimony. Specifically, the defendant argues that the trial court should have directed the jury to disregard the improper testimony and that the court's subsequent instruction did

not remedy the issue because it directed the jury to disregard only testimony given *after* the objection, when the objectionable testimony occurred *prior* to the objection. We conclude that the defendant waived any argument with respect to the remedy fashioned to address Diaz' improper testimony because the defendant expressly approved of the trial court's proposed course of action.

Waiver is the voluntary relinquishment of a known right. See, e.g., *State* v. *Kemah*, 289 Conn. 427, 957 A.2d 852 (2008); *State* v. *Fabricatore*, 281 Conn. 469, 482 n.18, 915 A.2d 872 (2007). To determine whether a party has waived an issue, the court will look to the conduct of the parties. *State* v. *Hampton*, 293 Conn. 435, 449, 978 A.2d 1089 (2009). "[W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 337, 977 A.2d 199 (2009). Likewise, a defendant is not permitted to induce a potentially harmful error at trial and then ambush the trial court with that claim on appeal. *State* v. *Fabricatore*, supra, 482.

In the present case, the defendant approved of the court's proposed course of action on at least two occasions. First, on February 25, 2015, when the court asked whether either party believed that the issue should be addressed prior to the jury instructions, defense counsel expressed satisfaction with the court's proposed remedy by replying that he had been working on language for the instruction. Specifically, the court offered to intervene prior to the jury charge should a party request it. The defendant made no such request. Second, on March 3, 2015, the defendant affirmatively agreed with the court's proposed jury instruction during the first charging conference. Accordingly, given that the defendant never requested earlier action from the trial court, affirmatively indicated that the court could remedy the issue through the final charge to the jury, and then ultimately approved of the court's proposed instructions, the defendant expressly waived any claim that the court inadequately addressed Diaz' improper testimony.[5]

## II

We next turn to the defendant's claim that the trial court improperly admitted testimony that the victim's mother had heard that the defendant was connected to the victim's disappearance. The following additional facts and procedural history are relevant to our resolution of this claim. During direct examination by the state, the victim's mother testified that she knew the defendant through her sister-in-law and that, although she had known him for many years, she did not know him well. The victim's mother further testified that the

defendant was familiar with her children because he had once lived in the same apartment building. Although the defendant was not still living in that building in October, 1987, the victim's mother testified that she would occasionally see the defendant driving his Datsun in the neighborhood. The following exchange then occurred:

"[The Prosecutor]: Now, during that month, from when [the victim] went missing until her body [was] found, did you ever hear anything about [the defendant] as it related to the disappearance of [the victim]?

"[Defense Counsel]: Objection, Your Honor, as to the relevance of what they heard about that.

"[The Prosecutor]: I would claim its relevance, Your Honor, and I'm asking just yes or no.

"The Court: Yes or no, I allow that. Objection is overruled.

"[The Prosecutor]: During that month did you ever hear any information about [the defendant] as it related to [the victim's] disappearing?

"[The Witness]: Yes, sir.

"[The Prosecutor]: With that information, did you ever tell the police about that information?

"[The Witness]: Yes."

The defendant did not raise any additional objections and did not cross-examine the victim's mother.

On appeal, the defendant claims that the testimony indicating that the victim's mother had heard that the defendant was connected to the victim's disappearance constituted hearsay. In particular, the defendant contends that, because the victim's mother testified as to the content of a statement made by a third party that was offered to establish the truth of the matter asserted, it constituted hearsay. Finally, the defendant claims that by ruling that the victim's mother could testify with a yes or no answer, the court treated the objection as being based on hearsay. In response, the state argues, inter alia, that the defendant's hearsay claim is unpreserved. Specifically, the state argues that the claim is not reviewable because the defendant objected on the basis of relevancy and not hearsay. We agree with the state and conclude that, because the defendant did not object on the basis of hearsay before the trial court, he is foreclosed from doing so on appeal.[6]

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objec-

tion and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . *Once counsel states the authority and ground of* [*the*] *objection, any appeal will be limited to the ground asserted.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013); see also Practice Book § 67-4 (3). We have explained that these requirements are not simply formalities. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). Thus, because the essence of preservation is fair notice to the trial court, "the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." *State* v. *Jorge P.*, supra, 754.

At trial, defense counsel objected to the prosecution's question to the victim's mother, stating "[o]bjection, Your Honor, as to the *relevance* of what they heard about that." (Emphasis added.) The prosecutor responded: "I would claim its *relevance* . . . ." (Emphasis added.) The court then overruled the defendant's relevancy objection. The defendant never expounded upon this objection and never raised another objection, based on hearsay or otherwise. The defendant's attempt, on appeal, to characterize the relevancy objection at trial as one based on hearsay finds no support in the record. Pursuant to Practice Book § 5-2, "[a]ny party intending to raise any question of law which may be the subject of an appeal *must . . . state the question distinctly* to the judicial authority on the record . . . ." (Emphasis added.) Not only did the defendant fail to raise the issue of hearsay "distinctly," he failed to raise it entirely. Given that the defendant objected only to the relevance of the prosecution's question, the trial court had no notice or opportunity to consider the issue of hearsay. Accordingly, we conclude that the defendant's hearsay claim is unpreserved.

The judgment is affirmed.

In this opinion ROGERS, C. J., and EVELEIGH, McDONALD and VERTEFEUILLE, Js., concurred.

[1] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).

[2] Specifically, the defendant objected to the jury instruction regarding an identification made by another witness, Frederick Quinones. The defendant claimed that, because Quinones' identification was based on familiarity with the defendant, the word "suspect" in the instruction should be changed to "subject." The court agreed to the change. The defendant also objected to the use of the phrase "eye witness," because he believed that it conveyed to the jury that the witness had seen the defendant at the crime scene. The

court agreed to omit the word "eye." The defendant made no other objections to the jury instructions.

[3] The defendant also argues that it is not necessary to move to strike evidence after a party has objected to it in order to preserve a claim of error. The defendant is correct that, ordinarily, when an objection to a question is sustained in the presence of the jury, the objecting party is not required to move to strike an answer given by the witness prior to that objection. *Hackenson* v. *Waterbury*, 124 Conn. 679, 684, 2 A.2d 215 (1938); see also *State* v. *Lewis*, 303 Conn. 760, 779, 36 A.3d 670 (2012). Specifically, in *Hackenson*, this court explained that "[t]here is authority that where the court in sustaining an objection to the question has not directed the jury not to consider the reply given, a motion to strike it out is essential to its proper elimination. . . . We adopt, however, a rule . . . which is less technical, yet sufficient for the ample protection of the parties' rights. . . . The only basis upon which [a party] can claim error in the ruling of the trial court in setting aside the verdict is that the jury could, in the absence of a motion to strike out, properly consider the testimony. That is not the law in this jurisdiction." (Citations omitted.) *Hackenson* v. *Waterbury*, supra, 684. Recently, we observed that, under *Hackenson*, once a court sustains an objection to a question in the presence of the jury, the witness' response may not be considered even in the absence of a motion to strike. *State* v. *Lewis*, supra, 779. This case presents an unusual situation in which the jury was excused at the defendant's request prior to the court's ruling on the objection. Outside the presence of the jury, the court sustained the defendant's objection and did not notify the jury until giving the jury instructions. We need not reach the defendant's claim that he was not required to move to strike the improper testimony because we conclude that, by agreeing with the trial court's proposed course of action, he waived any argument with respect to the trial court's remedy for Diaz' improper testimony.

[4] The state also argues that the defendant is not aggrieved by the trial court's ruling because he prevailed on his objection and, additionally, received the jury instruction that he sought. The state contends that, because the defendant is not aggrieved, his claim is not justiciable. This contention can be disposed of quickly. Questions of justiciability implicate this court's subject matter jurisdiction. *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 6, 917 A.2d 966 (2007). In the present case, the defendant was found guilty, and, although the trial court sustained his objection, it did so outside the presence of the jury. The defendant argues on appeal that he did not obtain an adequate remedy for Diaz' improper testimony. As such, we conclude that the defendant is aggrieved for purposes of appeal. Cf. *In re Allison G.*, 276 Conn. 146, 158, 883 A.2d 1226 (2005) (noting, in different context, that prevailing party can be aggrieved "if the relief awarded to that party falls short of the relief sought" [internal quotation marks omitted]).

[5] Although the defendant has conceded that, by accepting the court's proposed instruction he "may [be] prevent[ed] . . . from pursuing a claim that the jury instruction was improper," he nevertheless argues that the jury instruction did not cure the evidentiary problem. To the extent that the defendant challenges the jury instruction itself, we conclude that he impliedly waived any such argument under *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). Where, as here, "the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. Here, all of the foregoing criteria were satisfied. During the first charging conference, defense counsel informed the court that he had reviewed the court's proposed jury instruction on the matter and that the defendant had no objection to it. Thus, the defendant waived any claim of instructional error. See *State* v. *Bellamy*, 323 Conn. 400, 404–410, 147 A.3d 655 (2016) (holding that defendant impliedly waived claim that trial court's jury instruction on witness identification was deficient when the defendant was provided copy of proposed jury instructions and indicated that he understood and accepted trial court's proposed identification instruction).

[6] We note that defendant's brief also asserts that the challenged testimony lacked probative value. Although the defendant's relevancy objection arguably includes such an argument, we conclude that this claim is inadequately briefed. We have explained that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.

. . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). Here, the defendant devotes only one paragraph to a general argument that rumors are inadmissible because they lack probative value. The defendant offers no analysis on this point beyond a string citation to precedent from other states. Consequently, we decline to reach the defendant's claim regarding the probative value of the challenged testimony, to the extent that it is subsumed in the relevancy objection at trial, because that claim is inadequately briefed on appeal.

---