KAHN, J.
**586 *705 Sometimes, the dispositive issue in an appeal is whether the reviewing court properly should reach the merits. Upon this court's grant of his petition for certification, the respondent, the Commissioner of Correction, appeals from the Appellate Court's judgment reversing the judgment of the habeas court, which had denied the petition for a writ of habeas corpus **587 filed by the petitioner, David Eubanks.[1] The respondent claims that the Appellate Court improperly reached the merits of the petitioner's claim that his trial counsel rendered ineffective assistance of counsel by failing to object to certain portions of the prior testimony of Tanika McCotter on the basis that those portions of her testimony constituted double hearsay. Eubanks v. Commissioner of Correction , 166 Conn. App. 1, 22, 140 A.3d 402 (2016). The respondent contends that because the petitioner raised this argument for the first time on appeal, the petitioner's claim is unreviewable. The petitioner responds that the Appellate Court properly addressed the double hearsay issue and reasserts the alternative ground for affirmance that he raised in the Appellate Court. Specifically, the petitioner contends that the Appellate Court's judgment may be affirmed on the basis that defense counsel's failure to object to double hearsay as substantive evidence was objectively unreasonable under Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). Our review of the record reveals that the petitioner presented no evidence and made no argument to the habeas court that would have alerted either that court or opposing counsel to the petitioner's intent to argue that his trial counsel's failure to object to portions of the prior testimony on the basis of double hearsay was objectively unreasonable. Accordingly, we agree with the respondent that the Appellate Court improperly reached the merits of the petitioner's claim. For the same reason, we reject the petitioner's alternative **588 ground for affirmance. Accordingly, we reverse the judgment of the Appellate Court.
In its 2012 decision affirming the petitioner's judgment of conviction on direct appeal, the Appellate Court set forth the following relevant facts. "At approximately 6 a.m. on November 22, 2008, Bennett Hines, an officer with the New Haven [P]olice [D]epartment, was sitting in his patrol car. At that hour in the morning there was no vehicle traffic and no cars were parked by the side of the street. Hines heard several gunshots come from the New Haven green in the vicinity of Elm and College Streets, which location was approximately two blocks from where he was parked. When Hines looked in the *706 general direction from which he heard the gunshots fired, he saw a dark colored sport utility vehicle (SUV) turn left from Elm Street onto Church Street. As the SUV turned onto Wall Street, Hines noticed that the tires of the SUV were 'screeching ....' Based on the speed at which the SUV was traveling and the way it turned onto Wall Street, Hines believed that it was likely that the occupants of the vehicle had discharged the gunshots; as a result he began to follow the SUV. Hines reported the incident to dispatch and activated his cruiser's lights and sirens.
"The SUV traveled through the city and onto the entrance ramp to Interstate 91; it 'would not stop.' Hines observed a 'dark colored item come out of the passenger side window' and 'a silver colored item come out of the driver side window.' Based on his training and experience, Hines believed the items thrown out of the windows to be guns. Officer Edward Dunford, who was following behind Hines' cruiser, also saw 'something dark colored come flying out of the passenger side of the vehicle ....'
"Before entering the highway, the SUV stopped. Hines drew his gun and went to the driver's side of the car.
**589 Dunford drew his gun and went, with other officers, to the passenger side of the vehicle .... McCotter was operating the SUV, the [petitioner], her boyfriend, was in the front passenger seat and her brother ... was in the rear passenger seat. The [petitioner] initially disobeyed commands from the officers, stepped over the guardrail and 'look[ed] around him.' The [petitioner] eventually complied with orders to lie on the ground and was arrested .... McCotter and [her brother] also were arrested. The officers then searched the area where they believed the items were tossed from the windows of the SUV. Using a thermal imager, Sergeant Peter Moller found a semiautomatic .45 caliber black Ruger handgun, with the safety off and its magazine empty, lying on top of a pile of leaves. No other weapon was found.
"Detective Joshua Armistead investigated the area of College and Elm Streets where the gunshots reportedly had been fired. Armistead found eight .40 caliber shell casings spread out over several car lengths. He stated that the casings 'looked like they were fired from some-body moving on Elm Street.' Lieutenant Joseph Rainone, a firearms examiner with the Waterbury [P]olice [D]epartment, determined that the Ruger handgun was operable. He also determined that although the eight shell casings had similar class characteristics, he was unable to conclude whether they had been fired from the same firearm. He was able to determine, however, that the shell casings did not come from the Ruger handgun.
"The [petitioner] was charged with [various weapons offenses and with violation of a protective order]." (Footnote omitted.) State v. Eubanks , 133 Conn. App. 105, 106-108, 33 A.3d 876, cert. denied, 304 Conn. 902, 37 A.3d 745 (2012).
At the petitioner's criminal trial, the state sought to introduce McCotter's prior testimony at a hearing conducted **590 pursuant to this court's decision in State v. Stevens , 278 Conn. 1, 12-13, 895 A.2d 771 (2006).[2] The state claimed that the prior testimony was admissible pursuant to § 8-6 (1) of the Connecticut Code of Evidence[3] *707 because McCotter was unavailable as a witness, the issues at the Stevens hearing were substantially similar to those presented at the criminal trial, and the petitioner had been given an adequate opportunity to cross-examine McCotter at the Stevens hearing.
The petitioner's trial counsel, Walter Bansley IV, who also had represented the petitioner at the Stevens hearing, objected to the admission of the transcript of McCotter's testimony on two bases. Although the state expressly had relied on the prior testimony exception to the hearsay rule in seeking to have the Stevens hearing transcript admitted; see footnote 3 of this opinion; Bansley did not argue that the references in the transcript to McCotter's prior statement to the police constituted inadmissible double hearsay.[4] Instead, he argued that **591 the transcript was inadmissible in its entirety. Both grounds on which he expressly relied in objecting to the admission of the transcript were predicated on the petitioner's right to confrontation. See Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004). First, he argued that, because the state had not exercised due diligence in its attempts to locate McCotter, she was not an unavailable witness. Second, Bansley contended that, because he had not had an adequate opportunity to cross-examine McCotter at the Stevens hearing, the admission of the transcript would violate the petitioner's right to confront the witness against him.
The trial court rejected both of the bases on which Bansley relied to argue that the admission of the Stevens hearing transcript would violate the petitioner's right to confront witnesses. Specifically, after hearing testimony regarding the state's efforts to locate McCotter, the court found that those efforts were reasonable and that she was unavailable. The court also implicitly found that the petitioner had an adequate opportunity to cross-examine McCotter at the Stevens hearing. The court therefore ruled that the transcript was admissible pursuant to § 8-6 (1) of the Connecticut Code of Evidence and that its admission would not violate the petitioner's right to confrontation.
*708 The court then noted, on the record, that for the sake of efficiency, in the event that the court ruled that the **592 Stevens hearing transcript was admissible, Bansley and the prosecutor had been reviewing it with the goal of arriving at an agreement as to any redactions. Counsel informed the court that, with a few exceptions, they already had arrived at an agreement as to redactions. The court heard argument and made rulings on the minor points of disagreement that remained between the parties. The following material was redacted from the transcript: an exchange in which the court excused McCotter to allow her to consult with her attorney regarding her fifth amendment privilege against self-incrimination; testimony to which Bansley had successfully objected at the Stevens hearing; testimony regarding whether McCotter wanted the protective order against the petitioner modified or removed; and testimony regarding the facts that gave rise to the protective order. With the redactions in place, the transcript of McCotter's testimony at the Stevens hearing was admitted in full.
Because it will be helpful to our discussion, we also summarize McCotter's testimony at the Stevens hearing. At that hearing, she testified that sometime between 4 and 4:30 a.m. on November 22, 2008, she, her brother and the petitioner left a party at her sister's house on Fitch Street in New Haven. She drove the petitioner's Ford Expedition, with the petitioner riding in the front passenger seat and her brother riding in the backseat, on the passenger side. She heard gunshots, "freaked out" and drove away from the sound toward the highway. When she noticed a police cruiser behind her, she pulled over. All three occupants of the vehicle, including McCotter, were arrested, and McCotter was brought to the police station for questioning.
McCotter further testified that on the morning in question, she heard gunshots but had not seen a gun. As to what she had told police during questioning at the police station, she testified that, initially, she told **593 them that she had not seen a gun. When the police pressed further and asked if there had been a gun in the car, she responded that there was not and reiterated that she had not seen one. Although she admitted that she eventually provided a recorded statement to the police in which she incriminated the petitioner and her brother in the shooting, she claimed that she did so only because the police had pressured her over a period of hours, she wanted to go home to her children, and she believed that the police would not allow her to leave until she told them what they wanted to hear. When the prosecutor showed McCotter her prior statement to the police, she again conceded that, ultimately, she had told the officers that the petitioner and her brother took guns out and were firing up into the air.
McCotter's testimony at the Stevens hearing was less than clear regarding whether she had told the truth in her prior statement to police. In response to her repeated avowals that she had given the police her recorded statement incriminating the petitioner and her brother only in order to be able to leave the station, the prosecutor asked her whether she had lied in that statement. Initially, McCotter failed to answer the question directly, maintaining that she had not seen a gun and that she told the police otherwise only because they pressured her. When the prosecutor asked her again whether she had told the truth in her statement, she answered: "No, I don't know where the shots came from." Subsequently, however, she testified that she had been truthful with the police "when [she] gave that interview ...."
"At the conclusion of the jury trial, the [petitioner] was found guilty of unlawful *709 possession of a weapon in a motor vehicle and of criminal violation of a protective order. He was found not guilty on all other counts. The court imposed a total effective sentence of seven years imprisonment." **594 State v. Eubanks , supra, 133 Conn. App. at 110, 33 A.3d 876. The Appellate Court affirmed the judgment of conviction on appeal, rejecting, inter alia, the petitioner's challenge to the sufficiency of the evidence. Id., at 106, 110, 33 A.3d 876. In arriving at its conclusion that the evidence was sufficient to support the petitioner's conviction of unlawful possession of a weapon in a motor vehicle, the Appellate Court relied on the fact that the portions of the Stevens hearing transcript that referred to McCotter's prior statement to the police had been admitted as substantive evidence. Id., at 113, 33 A.3d 876. The Appellate Court also observed that McCotter's prior recorded statement to the police was corroborated by the "testimony of police officers regarding gunshots fired, the location and direction of the SUV and the spent .40 caliber shell casings ...." Id., at 115, 33 A.3d 876.
The petitioner subsequently filed this amended petition for a writ of habeas corpus, alleging, inter alia, that Bansley had rendered ineffective assistance of counsel because he "failed to specifically object to the admission of ... McCotter's Stevens testimony-including her hearsay statements to the police-as substantive evidence, and erroneously conceded to admission thereof as substantive evidence ...." Following a trial, the habeas court denied the petition, finding that Bansley had "adequately objected" to the admission of the Stevens hearing transcript.
The petitioner appealed from the habeas court's denial of his petition for certification to appeal to the Appellate Court. Eubanks v. Commissioner of Correction , supra, 166 Conn. App. at 3, 140 A.3d 402. During the pendency of the appeal, the petitioner sought an articulation from the habeas court as to five questions. The first two questions asked whether the habeas court's finding that Bansley adequately objected constituted a finding that (1) Bansley objected both to the Stevens hearing transcript and to the hearsay within it, or, in the alternative, (2) Bansley had failed to raise any hearsay objections, **595 but that the failure to do so was reasonable. The petitioner also sought articulation as to three additional questions: whether Bansley's failure to object to the double hearsay in the Stevens hearing transcript fell below an objective standard of reasonableness; whether the failure to so object had prejudiced the petitioner; and whether the redactions that Bansley and the prosecutor had agreed upon addressed any resulting prejudice. After the habeas court denied the motion for articulation, the petitioner filed a motion for review with the Appellate Court. The Appellate Court granted the petitioner's motion and ordered the habeas court to issue an articulation, limited to the first two questions.
In its articulation, the habeas court began by observing that the evidentiary portion of the habeas trial lasted scarcely longer than thirty minutes and that Bansley testified for a total of approximately twenty minutes. Although the court clarified that it found that Bansley did not raise any hearsay objections to the introduction of the Stevens hearing transcript, it also emphasized that "[n]o testimony was elicited from [Bansley] about objecting to the Stevens testimony on hearsay grounds, nor his reasons for raising some grounds and not others and the trial strategy he employed." The habeas court further observed that the petitioner had failed to present any evidence during the habeas trial in support of the claims that he alleged in his motion for articulation, namely, that Bansley rendered deficient performance for failing to object on the basis *710 of double hearsay to the portions of the transcript that referred to McCotter's prior statement to the police. Put another way, the court stated, the motion for articulation effectively requested that the court "articulate as to issues where the petitioner's evidence is wholly lacking." Accordingly, the habeas court concluded, it lacked an evidentiary basis to find that Bansley's failure to object to those portions of the transcript was unreasonable. **596 The Appellate Court disagreed that there was insufficient evidence to reach the merits of the petitioner's claim that, in failing to object on the basis of double hearsay, Bansley had not exercised reasonable judgment. Eubanks v. Commissioner of Correction , supra, 166 Conn. App. at 11-13, 140 A.3d 402. The court explained that the evidence presented at the habeas trial demonstrated that there was "no conceivable tactical justification" for Bansley's failure to object on that basis. Id., at 12, 140 A.3d 402. The court relied on Bansley's testimony that his aim was to keep out the Stevens hearing transcript and also pointed to his testimony that when he was working with the prosecutor to obtain redactions, he sought redactions of every portion of the transcript that he believed was objectionable. Id., at 12-13, 140 A.3d 402. In light of that testimony, the Appellate Court concluded that Bansley was unaware that he could have objected to the portions of the transcript that referred to McCotter's prior statement to the police on the basis of double hearsay. Id., at 13, 16-17, 140 A.3d 402. The court also relied on what Bansley had not testified to at the habeas hearing. Specifically, the court observed that Bansley did not testify that he "made a reasonable tactical judgment to refrain from objecting based on hearsay grounds, nor did he offer a reasonable professional judgment that an objection based on hearsay grounds would not have succeeded." Id., at 13, 140 A.3d 402. The Appellate Court concluded that Bansley's "failure to identify the second level of hearsay within ... McCotter's Stevens testimony and subsequent failure to object to its use as substantive evidence was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in criminal law." (Internal quotation marks omitted.) Id., at 17, 140 A.3d 402.
The court further concluded that the petitioner had been prejudiced by Bansley's deficient performance. Id., at 21, 140 A.3d 402. It cited its prior decision in the direct appeal, in which it had relied on the Stevens hearing transcript, **597 as corroborated by the remainder of the evidence, to conclude that if the transcript had not come in for its substance, there would have been "very little evidence to establish that the petitioner was in actual possession of a gun in a motor vehicle." Id., at 20, 140 A.3d 402. The court observed that, even at the Stevens hearing, McCotter's testimony regarding her prior statement to the police was admitted solely for impeachment purposes. Id., at 13, 140 A.3d 402. In contrast, at trial, the portions of the transcript that referred to McCotter's prior statement to the police came in for their substance. Id. Without the admission of those portions of the transcript as substantive evidence, the court determined, its confidence in the verdict would be undermined. Id., at 21, 140 A.3d 402. Accordingly, the court reversed the judgment of the habeas court. Id., at 22, 140 A.3d 402. This certified appeal followed.
The respondent contends that the Appellate Court improperly addressed the question of whether Bansley rendered ineffective assistance of counsel by failing to object to the admission of the Stevens hearing transcript on the basis that the portions of the transcript referring to McCotter's prior statement to the police constituted double hearsay. We agree.
*711 "As we previously have noted, we will not review a claim unless it was distinctly raised at trial." Crawford v. Commissioner of Correction , 294 Conn. 165, 203, 982 A.2d 620 (2009) ; id., at 202-204, 982 A.2d 620 (declining to review petitioner's claim that habeas court improperly failed to apply due process analysis to his claim of right to appeal); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). We have explained that principles of fairness dictate that both the opposing party and the trial court are entitled to have proper notice of a claim. Council v. Commissioner of Correction , 286 Conn. 477, 498, 944 A.2d 340 (2008). Our review of a claim not distinctly raised at **598 the trial court violates that right to notice. As we have explained, appellate review of "newly articulated claim[s]" not raised before the habeas court "would amount to an ambuscade of the [habeas] judge ...." (Citation omitted; internal quotation marks omitted.) Johnson v. Commissioner of Correction , 285 Conn. 556, 580, 941 A.2d 248 (2008). Accordingly, "the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Internal quotation marks omitted.) State v. Miranda , 327 Conn. 451, 465, 174 A.3d 770 (2018). We also observe that restricting our review to those claims that were distinctly raised at the habeas trial serves yet another, practical purpose-ensuring that an adequate record exists for such review.
In our review, it is important to keep in mind precisely what the petitioner was obligated to "distinctly raise" at the habeas court in order both to provide proper notice to the court and the respondent and to ensure an adequate record for review. "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong." (Internal quotation marks omitted.) Gaines v. Commissioner of Correction , 306 Conn. 664, 678, 51 A.3d 948 (2012). As to the performance prong, the question is whether "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, supra , 466 U.S. at 688, 104 S.Ct. 2052. It is well settled that it is the petitioner who bears the burden to prove that his counsel's performance was objectively unreasonable. See Mozell v. Commissioner of Correction , 291 Conn. 62, 79, 967 A.2d 41 (2009) ("[a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no **599 ... tactical justification for the course taken" [internal quotation marks omitted] ); see also Strickland v. Washington , supra, at 689, 104 S.Ct. 2052 (petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" [internal quotation marks omitted] ).
Given these principles, we review the habeas trial record in order to determine whether the petitioner distinctly raised the claim that Bansley's performance was objectively unreasonable on the basis that Bansley failed to object to the references within the Stevens hearing transcript to McCotter's prior statement to the police on the basis of double hearsay. At the habeas court, the only allusion to the petitioner's claim that Bansley rendered ineffective assistance of counsel for failing to object on the basis of double hearsay is in the petition itself, which alleges that Bansley "failed to specifically object to the admission of ... McCotter's Stevens testimony-including her hearsay *712 statements to the police -as substantive evidence, and erroneously conceded to admission thereof as substantive evidence ...." (Emphasis added.) The petitioner, however, did not pursue that allegation during the habeas trial. He did not elicit any testimony that would have supported the allegation or present any argument that would have alerted either opposing counsel or the habeas court that he was pursuing that allegation.
As we have already noted, the single day habeas trial was quite brief, and Bansley testified for approximately twenty minutes, including direct, cross- and redirect examinations. Our review of the habeas trial transcript reveals that the petitioner elicited no testimony from Bansley regarding his failure to object to the admission of any portion of the Stevens hearing transcript on the **600 basis that it constituted double hearsay.[5] As a result, the petitioner asked no questions regarding whether such failure was the result of error or incompetence, or part of a trial strategy, and, if so, what that strategy was. In closing argument, neither habeas counsel nor the respondent evinced any understanding that the question of Bansley's failure to raise a double hearsay objection had been presented to the habeas court.[6] Furthermore, because there was no testimony, evidence or argument as to Bansley's failure to object on the basis of double hearsay, the habeas court made no findings regarding whether Bansley had rendered deficient performance for failing to do so or whether the petitioner had been prejudiced by that failure.
The habeas court's oral decision makes clear that, if the petitioner intended to argue at the habeas trial that Bansley had rendered ineffective assistance of counsel by failing to object on the basis of double hearsay, the court had not been placed on notice that the petitioner was making that argument. The court expressed its understanding that the petitioner was claiming generally that Bansley improperly had failed to "object to **601 the admission of [the transcript] as substantive evidence ...." The court's explanation of its rejection of the petitioner's claim echoed that same understanding. The court stated: "Bansley also adequately objected to ... McCotter's testimony from the Stevens hearing being introduced into evidence, which the trial court overruled; but, at any rate, he was able to redact portions of the testimony that may have been prejudicial to the petitioner." The court's ruling supports the conclusion that it understood the petitioner's claim to be focused on Bansley's failure to persist in objecting to the admission of the transcript generally, and that it did not perceive that the petitioner made any specific arguments regarding particular portions of the transcript. Moreover, nothing in the court's decision suggests that it *713 understood the petitioner to be making any argument based on the failure to object on the basis of hearsay particularly, much less double hearsay.
Our review of the record persuades us that the Appellate Court improperly addressed the petitioner's claim that Bansley rendered ineffective assistance of counsel by failing to raise a double hearsay objection to the admission of those portions of the Stevens hearing transcript that referenced McCotter's prior statement to police. As we have observed, the petitioner alluded to the issue of double hearsay only once, in the petition itself, which includes a reference to McCotter's "hearsay statements to the police ...." That fleeting reference is insufficient to provide a basis for review. If we were to conclude on the basis of that brief mention of the issue that the petitioner had "distinctly raised" the claim he now pursues on appeal, it would be difficult to say that any issue, no matter how briefly and generally alluded to, had not been raised before the habeas court. Specifically, as we have detailed herein, the petitioner failed to elicit any testimony at the habeas trial that would have proved the allegation, and would have **602 alerted both opposing counsel and the habeas court that he was presenting an argument predicated on Bansley's failure to raise a double hearsay objection. The petitioner also failed to make any argument to the habeas court that would have alerted it to his reliance on this theory. Setting forth the allegation in the petition was not sufficient-without more-to alert either the court or the respondent that the petitioner intended to pursue this argument.[7]
The habeas court's subsequent articulation confirmed that it had not been on notice during the habeas trial that the petitioner was arguing that Bansley rendered ineffective assistance of counsel for failure to object on the basis of double hearsay. The court specifically stated that, due to the failure of the petitioner to advance this theory at trial, the record was inadequate to allow it to make findings as to that issue. Accordingly, we decline to review the merits of the petitioner's claim.
Because we conclude that the petitioner failed to present any evidence or pursue an argument before the habeas court that Bansley's failure to object on the basis of double hearsay constituted deficient performance, we also reject the petitioner's alternative ground for affirmance. Specifically, the petitioner contends that the Appellate Court's judgment could be affirmed on **603 the alternative ground that the court properly concluded that Bansley's failure to object on the basis of double hearsay was objectively unreasonable. In arriving at that conclusion, however, the Appellate Court relied on its observation that "[t]he petitioner's trial counsel did not indicate that he made a reasonable tactical judgment to refrain from objecting based on hearsay grounds, nor did he offer a reasonable professional judgment that an objection based on hearsay grounds would not have succeeded." *714 Eubanks v. Commissioner of Correction , supra, 166 Conn. App. at 13, 140 A.3d 402. Although we agree that Bansley failed to testify to these matters, it is significant that the reason for this lacuna in the record was that the petitioner failed to pursue this theory at the habeas trial.
The Appellate Court also acknowledged the principle that there is a strong presumption in favor of concluding that counsel's performance was competent. Id., at 12, 140 A.3d 402. That principle bears emphasis. In order to overcome that presumption, the petitioner bears the burden of proving "that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington , supra, 466 U.S. at 688, 104 S.Ct. 2052. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances ." (Emphasis added.) Id. Thus, the question of whether counsel's behavior was objectively unreasonable is not only one on which the petitioner bears the burden of proof; its resolution turns on a fact intensive inquiry.
For these reasons, Strickland makes clear that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. ... A fair assessment **604 of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citation omitted.) Id., at 689, 104 S.Ct. 2052. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id."Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." (Emphasis added.) Id., at 690, 104 S.Ct. 2052.
In light of the fact intensive nature of the inquiry, its highly deferential nature, and, most important, in light of the fact that it is the petitioner who bears the burden of proving that counsel's performance was objectively unreasonable, it will be the rare case in which it is appropriate to conclude-particularly on such a scant record-that a petitioner has borne that burden. The Appellate Court, concluding that this was such a case, indicated that "no conceivable tactical justification for counsel's actions existed." Eubanks v. Commissioner of Correction , supra, 166 Conn. App. at 12, 140 A.3d 402. We disagree. The Appellate Court, however, did not indicate on what basis it determined it was appropriate to reach this issue, and we are not aware of any such basis.[8] In the **605 *715 absence of any testimony, evidence or argument advanced to the habeas court on the issue, we decline to second-guess counsel's decisions.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment dismissing the petitioner's appeal.
In this opinion the other justices concurred.

This court granted the respondent's petition for certification, limited to the following issue: "Did the Appellate Court correctly determine that the habeas court incorrectly rendered judgment for the respondent on the petitioner's claim that his trial counsel was ineffective in failing to object to portions of the testimony of Tanika McCotter in a transcript admitted under the former testimony exception to the hearsay rule, on the ground that they were 'double hearsay'?" Eubanks v. Commissioner of Correction , 323 Conn. 911, 149 A.3d 980 (2016).

The purpose of a Stevens hearing is to determine whether probable cause exists for finding that a defendant violated a "no subsequent arrests" condition of a plea agreement. State v. Stevens , supra, 278 Conn. at 12-13, 895 A.2d 771.

Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) ... Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. ..."

At the criminal trial, Bansley did not object on hearsay grounds to the admission of the transcript of McCotter's testimony at the Stevens hearing. We observe, however, that Bansley's "failure" to expressly object to the admission of the transcript generally on the basis of hearsay is not relevant to the petitioner's claim that Bansley rendered ineffective assistance of counsel. As we recount in this opinion, the state offered the transcript pursuant to § 8-6 (1) of the Connecticut Code of Evidence, which sets forth an exception to the hearsay rule. Although Bansley did not mention hearsay in opposing the admission of the transcript, it was not necessary for him to do so, given the state's proffer of it under a hearsay exception. The due process grounds that Bansley relied on in objecting-namely, that McCotter was available, and that he had not had an adequate opportunity to cross-examine her at the prior proceeding-are not only relevant to the question of whether the admission of the transcript implicated the petitioner's due process rights pursuant to Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004), but also are directly relevant to whether the transcript fell under the exception to the hearsay rule set forth in § 8-6 (1). See footnote 3 of this opinion. Finally, in rejecting Bansley's opposition to the state's proffer of the transcript, the trial court expressly held that it was admissible under § 8-6 (1). Accordingly, the trial court clearly understood the state and Bansley to be advancing arguments, respectively, for and against admission of the transcript pursuant to both the hearsay exception set forth in § 8-6 (1) and the due process claims under Crawford.

The habeas trial transcript reveals that the petitioner questioned Bansley regarding two issues: whether Bansley had provided the petitioner with effective assistance in connection with the petitioner's decision to withdraw his guilty plea and proceed to trial and whether Bansley had rendered deficient performance in failing to exclude the Stevens hearing transcript in its entirety. The petitioner's primary focus, however, was on the plea withdrawal. As to the transcript, the petitioner's habeas counsel asked a total of eight questions during his direct examination of Bansley regarding his failure to exclude that evidence. Those questions and Bansley's responses did not address the double hearsay issue. As would be expected given the petitioner's failure to ask any questions that even alluded to double hearsay, the respondent's cross-examination of Bansley also did not delve into that issue.

Habeas counsel merely stated generally that Bansley did not object to the admission of the Stevens hearing transcript for its substance. The respondent argued that there had been no testimony elicited during the trial regarding Bansley's reasons for "not objecting" to the admission of the Stevens hearing transcript.

We emphasize that our conclusion that the petitioner failed to distinctly raise the claim that Bansley rendered deficient performance for failing to object on the basis of double hearsay relies on the fact that the petitioner both presented no evidence and made no argument to the habeas court on the issue. If the petitioner had argued that claim to the habeas court, but had failed to present evidence to prove that Bansley's actions were objectively unreasonable, that failure alone would not require the conclusion that he had failed to distinctly raise the issue before the habeas court. For example, if the petitioner had simply argued to the habeas court that Bansley's failure to object on the basis of double hearsay was objectively unreasonable as a matter of law, an appellate court would be able to review an appeal from the judgment of the habeas court, because the petitioner would have distinctly raised the claim.

We observe that the petitioner did not request that his unpreserved claim be reviewed pursuant to State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989), which allows a party to raise an unpreserved constitutional claim under certain circumstances. Even if such a request had been made, it would have been unavailing. This court has previously held that a petitioner is not entitled to "Golding review of a claim that he raised for the first time in his habeas appeal but could have raised in his habeas petition" [because] [i]f we were to allow Golding review under such circumstances, a habeas petitioner would be free to raise virtually any constitutional claim on appeal, regardless of what claims he raised in his habeas petition or what occurred at his habeas trial. Such a rule would also undermine the principle that a habeas petitioner is limited to the allegations in his petition, which are intended "to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Emphasis in original; internal quotation marks omitted.) Moye v. Commissioner of Correction , 316 Conn. 779, 789, 114 A.3d 925 (2015).